**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOYCE A. JAWORSKI, ) | |
| ) | CASE NO. 1:10-CV-02936 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Joyce A. Jaworski ("Jaworski ") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Jaworski's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. Jaworski also filed a Title II application for disabled widow's benefits pursuant to 42 U.S.C. § 402(e). This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and REMANDED for further proceedings consistent with this opinion.

**I. Procedural History**

On April 19, 2007, Jaworski filed an application for POD, DIB, and SSI alleging a disability onset date of August 10, 2005. Her application was denied both initially and upon reconsideration. Jaworski timely requested an administrative hearing.

On January 7, 2009, an Administrative Law Judge ("ALJ") held a hearing during which Jaworski, represented by counsel, testified. Nancy J. Borgeson testified as an impartial vocational expert ("VE"). On March 16, 2009, the ALJ found Jaworski was able to perform her past relevant work and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

**II. Evidence**

*Personal and Vocational Evidence*

Age fifty-five (55) at the time of her administrative hearing, Jaworski is a "person of advanced age" under social security regulations. (Tr. 410.) *See* 20 C.F.R. §§ 404.1563(e) & 416.963(e). Jaworski has a tenth grade education and was working on her GED at the time of the hearing. (Tr. 422.) She has past relevant work as a general electronics assembler, administrative assistant, receptionist, pharmacy technician, and a salesperson. (Tr. 439-40.)

*Hearing Testimony*

At the hearing, Jaworski testified to the following:

- She lives in a house with her mother and her three grandchildren. She has custody of her grandchildren who are age ten, thirteen, and fourteen. (Tr. 421-22.)

- She stopped working in August of 2005, when the restaurant where she was working closed. (Tr. 423.)

- Her most significant problem with pain is in her neck and back stemming from

      scoliosis.  (Tr. 424.)  The pain is worse at night.  (Tr. 425.)

- Lifting and walking exacerbate her pain.  (Tr. 425.)  The heaviest thing she lifts around the house is a gallon of milk.  She can walk for only ten to fifteen minutes at a slow pace before the onset of pain.  Sitting down for fifteen minutes helps her recuperate.  (Tr. 426.)  However, after twenty-five to thirty minutes of sitting, she experiences pain.  (Tr. 427.)

- She stretches in an attempt to alleviate her back pain.  Though she is permitted to take her pain medication three times daily, she only takes it occasionally and chooses not to do so on a daily basis.  (Tr. 427.)  She takes her pain medication about four days per week.  Her pain medication makes her itch and sometimes induces and/or intensifies her migraine headaches.  (Tr. 428.)

- Her back pain is worse than her neck pain.  She experiences the latter about ten out of thirty days per month.  (Tr. 428-29.)  Her neck pain usually radiates down to her arms, primarily her right arm.  (Tr. 429-30.)  She is right-handed.  (Tr. 430.)

- She was tested for fibromyalgia a year earlier.  (Tr. 431.)

- She usually wakes up around 6:30 a.m. and helps her grandchildren get ready for school.  They prepare their own breakfast.  She helps pick up around the house and makes her bed.  (Tr. 432.)  She seldom vacuums, but can sweep though it bothers her hips "a little bit."  (Tr. 433.)  She does her laundry, but her grandchildren wash their own.  *Id.*  She has no difficulty preparing meals.  She takes care of her dog and cat.  To pass the time, she watches television, studies for her GED, and reads.  (Tr. 434.)

- She drives herself when she shops for groceries.  She asks for assistance lifting heavy items.  She does not go out much.  She did go fishing every other day with her grandson the previous summer, sometimes for three to four hour increments.  (Tr. 434-35.)

- She gets along with others, but has a quick temper.  (Tr. 435.)

- She suffers from COPD and experiences shortness of breath if she takes the stairs too quickly.  (Tr. 435-36.)  She is sensitive to aerosol sprays and air fresheners.  (Tr. 436.)

- She suffers from depression, even more so since her husband passed away.  (Tr. 436.)  A few times a month, it causes her to do nothing at all.  (Tr. 436-37.)  She takes medication for her depression, which helps.  (Tr. 437.)

3

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Jaworski was insured on her alleged disability onset date, August 10, 2005, and remained insured through December 31, 2010.  (Tr. 15.)  Therefore, in order to be entitled to POD and DIB, Jaworski must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Jaworski established medically determinable, severe impairments, due to chronic obstructive pulmonary disease, scoliosis, degenerative disc disease, fibromyalgia, restless leg syndrome, hypertension, and migraine headaches.  (Tr. 18.)  However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Jaworski was found capable of performing her past work activities, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI.  Analysis

*Treating Physician Rule*

Jaworski asserts that the ALJ erred by failing to adequately address the opinion of her treating physician, Dhia Aldoori, M.D. (ECF No. 13 at 8-11.) Specifically, Jaworski asserts that the ALJ – who found that Dr. Aldoori's opinion should receive less than controlling weight –

6

failed to meet the minimum articulation requirements of the regulations. *Id*. at 9.

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9). "If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011) (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory

diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).[2]

On June 28, 2007, Dr. Aldoori opined that Jaworski could stand/walk for less than thirty minutes in an eight-hour work day, could lift/carry less than three pounds, had moderate limitation in her ability to bend, and had marked limitation in her ability to push/pull. (Tr. 205.) At the time, Dr. Aldoori found that Jaworski's ability to sit was not affected. *Id*. On November 8, 2007, Dr. Aldoori completed another basic medical form finding greater restrictions on Jaworski's ability to function. (Tr. 202.) Notably, Dr. Aldoori opined that Jaworski's ability to stand/walk was reduced to less than fifteen minutes in an eight-hour work day, and that her ability to sit was also similarly limited. *Id*. Dr. Aldoori found that Jaworski had a marked limitation in her ability to bend, push/pull, and to perform repetitive foot movements. *Id*. In addition, Jaworski's ability to reach and handle was noted to be moderately limited. *Id*.

The ALJ's total analysis concerning the weight ascribed to Dr. Aldoori's opinion is as follows:

> While the claimant's treating physician, Dr. Aldoori set forth significant
> limitations in basic medical reports she completed on June 28, 2007 and January

---

[2] In addition, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, and may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984). According to 20 C.F.R. § 404.1527(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

> 24, 2008 [sic]. Also, Gregory Lindsay, M.D. stated in a letter dated April 16, 2007 that the claimant's medical conditions make it difficult for her to function and make it hard for her to hold a job but he did not set forth any specific limitations or objective medical evidence to support such statements. (Exhibits 191F, 194F, 220F). However, these opinions received less than controlling weight because such limitations are not well supported and are otherwise inconsistent with other substantial evidence such as the claimant's daily activities described above.

(Tr. 20.)

The inadequacy of the ALJ's opinion is highlighted by the Commissioner's brief. Rather than focusing solely on the actual opinion wherein the treating physician's opinions were essentially rejected, the Commissioner argues that Dr. Aldoori drastically altered Jaworski's sitting abilities in a matter of months. This observation is not found anywhere in the ALJ's opinion. (ECF No. 17 at 9.) Furthermore, even if the opinion that dramatically altered Jaworski's ability to sit were to be set aside, Dr. Aldoori consistently opined in both medical forms that Jaworski was limited to less than thirty minutes of standing/walking. This opinion was implicitly rejected in light of the ALJ's finding that Jaworski could stand/walk for two hours in an eight-hour work day. (Tr. 19.) Thus, discrepancies in the two forms – completed just months apart – are an insufficient reason to reject the standing/walking portion that is relatively consistent.

The Commissioner cannot cure a deficient opinion by offering explanations not provided by the ALJ. As this Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n.1, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)

("we cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument).

The ALJ's own reasons for not ascribing controlling weight to Dr. Aldoori's opinions are perfunctory and conclusory. Without any meaningful analysis, the Court cannot discern in what manner Dr. Aldoori's opinion was inconsistent with other unidentified "substantial evidence." Similarly, though the ALJ also concludes that Dr. Aldoori's opinion is not consistent with Jaworski's daily activities, it is unclear how. Because the ALJ did not provide an analysis that is sufficiently specific, Jaworski's argument that the ALJ failed to properly articulate the weight given to Dr. Aldoori is well-taken. The Court is unable to trace the path of the ALJ's reasoning. Though the ALJ certainly was not bound to accept Dr. Aldoori's opinion, the analysis was insufficient under the Administration's procedural rules.

### *Severe Impairment*

Jaworski also asserts that the ALJ erred by failing to find that her depression constituted a "severe impairment" at Step Two of the sequential analysis. (ECF No. 13 at 11-14.) The ALJ found that Jaworski's mental impairment caused no more than mild limitations and, therefore, pursuant to 20 C.F.R. § 404.1520a(d)(1), was not "severe."[3] (Tr. 18.) The Sixth Circuit

---

[3] 20 C.F.R. § 404.1520a(d)(1) states that: "If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that

construes the step two severity regulation as a "*de minimis* hurdle," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." S.S.R. 96-3p, 1996 WL 374181 at *1. However, where an ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" S.S.R. 96-8p, 1996 WL 374184, at *5. When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 576-577 (6th Cir. 2009).

As it has already determined that a remand is necessary, the Court declines to address the merits of this argument. Nonetheless, upon remand, the ALJ should consider whether an impairment is severe utilizing the *de minimis* standard applied in this circuit.

*Pain Analysis*

Finally, Jaworski argues that the ALJ erred in his analysis of her pain and other symptoms. (ECF No. 13 at 15-16.) The ALJ's pain analysis focused, in large part, on Jaworski's activities. (Tr. 20.) Because the Court has determined that a remand is necessary for greater articulation as to the weight conferred upon the opinion of treating physician Dr. Aldoori – an opinion ostensibly rejected primarily due to the claimant's daily activities – it is unnecessary to

---

there is more than a minimal limitation in your ability to do basic work activities."

determine whether the ALJ also erred in his pain analysis. The new opinion should address Jaworski's activities and discuss their consistency/inconsistency with the functional limitations found by Dr. Aldoori in greater detail.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: January 26, 2012